Gary D. Sesser
Judith M. Wallace
Alexander G. Malyshev
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York  10005
(212) 732-3200
*Attorneys for Defendants Oleg Batratchenko, Thor United Corp., Thor United Corp. (Nevis), Thor Real Estate Master Fund, Ltd., Thor Guarant Real Estate Fund, Ltd., Thor Opti-Max LLC, Thor Opti-Max Fund, Ltd., Thor Asset Management, Inc., Thor Real Estate Management LLC, Thor Capital LLC, Thor Futures LLC, and Thor Realty LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

LUDMILA LOGINOVSKAYA,

                    Plaintiff,

        - against -

OLEG BATRATCHENKO, TATIANA SMIRNOVA
(a/k/a TATIANA SMIRNOFF, a/k/a TATIANA
BATRATCHENKO), THOR UNITED CORP.,
THOR UNITED CORP. (NEVIS), THOR REAL
ESTATE MASTER FUND, LTD., THOR
GUARANT REAL ESTATE FUND, LTD., THOR
OPTI-MAX LLC, THOR OPTI-MAX FUND, LTD.,
THOR ASSET MANAGEMENT, INC., THOR
REAL ESTATE MANAGEMENT LLC, THOR
CAPITAL LLC, THOR FUTURES LLC, THOR
REALTY LLC, and John Does 1-20,

                    Defendants.

------------------------------------------------------------------------X

Case No. 12 Civ. 0336 (JPO)

**ECF Case**

## REPLY MEMORANDUM OF LAW ON BEHALF OF BATRATCHENKO AND THE THOR DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
———
(212) 732 - 3200

7103331.5

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................2

POINT I

PLAINTIFF'S ARGUMENTS IN OPPOSITION REGARDING *MORRISON*
REVEAL THAT PLAINTIFF SEEKS TO EXPAND THE SCOPE OF THE
COMMODITIES EXCHANGE ACT BEYOND ITS INTENDED LIMITS ...............2

A.    The Presumption Against Extraterritoriality Forecloses Plaintiff's Argument that the
CEA Creates a Cause of Action for Common Law Fraud and Breach of Contract Claims
Unrelated to Commodities or Futures Trading ...............................................................2

B.    Plaintiff Does Not Sufficiently Allege a Domestic Transaction under the CEA ................3

POINT II

PLAINTIFF'S ASSERTIONS OF FIDUCIARY DUTY DO NOT SALVAGE HER
FRAUD AND BREACH OF CONTRACT CLAIMS BECAUSE ANY FIDUCIARY
DUTIES ARE LIMITED BY CONTRACT ...................................................................6

A.    Any Fiduciary Duties by Movants Are Constrained by the Terms of the IMs ....................6

B.    Plaintiff's Veil-Piercing Allegations Are Not Sufficient to Allow Her to Reconfigure the
Relationships Set Forth in the IMs and Allege that Fiduciary Duties Are Owed to Her by
Each and Every Movant .................................................................................................8

CONCLUSION .........................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)...................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................6

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991)...........................................................................................2

*Greenwood v. Koven*,
   880 F.Supp. 186 (S.D.N.Y.1995) .....................................................................6, 7

*In re Refco Inc. Securities Litigation*,
   826 F. Supp.2d 478 (S.D.N.Y. 2011)...................................................................7

*Mickle v. Christie's, Inc.*,
   207 F. Supp.2d 237 (S.D.N.Y. 2002)...................................................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
   130 S. Ct. 2869 (2010).................................................................................. *passim*

*Norex Petroleum Ltd. v. Access Indus., Inc.*
   631 F.3d 29 (2d Cir. 2010)..................................................................................4

*Small v. United States*,
   544 U.S. 385 (2005)...........................................................................................2

### STATUTES

7 U.S.C. § 5..............................................................................................................3

7103331.5

Batratchenko and the Thor Entities[1] (hereinafter, "Movants" or "Defendants"), respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint ("Complaint") filed by Plaintiff Ludmila Loginovskaya.

## PRELIMINARY STATEMENT

Movants conclusively established in their initial brief that Plaintiff's case, which she repeatedly confirms is about the propriety of certain real-estate investments, does not belong in federal court because her sole federal cause of action under the Commodities Exchange Act (the "CEA"), aside from being defective on its face, is foreclosed by the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) as an impermissible extraterritorial application of U.S. laws. Nothing in Plaintiff's opposition demonstrates that her vague and conclusory allegations relating to a classic "f-cubed" transaction (foreign issuer, buyer and conduct) meet the test set forth in *Morrison*, and in any event, only serves to show that she attempts to stretch the scope of the CEA beyond its intended limits when her real complaint relates to something *not* covered by the CEA: whether or not certain real estate investments were permissible as a matter of contract between Plaintiff and some of the Defendants.

Although the Complaint fails to allege which investment program Plaintiff purchased an interest in, Movants submitted the investment memoranda (the "IMs") that unquestionably govern all of the Thor programs mentioned in the Complaint. The extensive disclaimers and disclosures in each end every one of those IMs is fatal to both Plaintiff's fraud and contract based claims. Faced with these documents, Plaintiff pivots, in effect abandoning the contract claims, and attempting to base her fraud claims on conclusory allegations that some fiduciary duties were owed to her by some unidentified subset of the Defendants. Plaintiff fails to

---

[1] For the purposes of judicial economy, defined terms as used in Movants' initial memorandum of law are incorporated by reference herein.

recognize, however, that even if fiduciary duties were owed, they are circumscribed by the terms of the very same IMs. To be clear, nothing in Plaintiff's Complaint or opposition sets forth a viable claim for breach of fiduciary duty, breach of contract, or fraud, and Plaintiff's defective and conclusory assertions of alter ego status are not sufficient to overcome this hurdle by impermissibly grouping such conclusory allegations against all Defendants.[2]

**ARGUMENT**

**POINT I**

**PLAINTIFF'S ARGUMENTS IN OPPOSITION REGARDING *MORRISON* REVEAL THAT PLAINTIFF SEEKS TO EXPAND THE SCOPE OF THE COMMODITIES EXCHANGE ACT BEYOND ITS INTENDED LIMITS**

Plaintiff's opposition confirms that she does not allege a claim for a domestic transaction within the scope of the CEA and, accordingly, absent a basis for federal subject matter jurisdiction, this Court should dismiss the Complaint in its entirety.[3]

**A.      The Presumption Against Extraterritoriality Forecloses Plaintiff's Argument that the CEA Creates a Cause of Action for Common Law Fraud and Breach of Contract Claims Unrelated to Commodities or Futures Trading**

In *Morrison,* the U.S. Supreme Court applied a longstanding rule of statutory interpretation, which is that a statute presumptively *does not* apply extraterritorially absent a clear expression by Congress to the contrary. *See, e.g., Morrison,* 130 S. Ct. at 2877; *Small v. United States,* 544 U.S. 385, 390-91 (2005) (courts "assume a congressional intent that [statutory language] applies domestically, not extraterritorially"); *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 288 (1991) (absent clear affirmative statutory language "we must presume that [statutory language] is primarily concerned with domestic conditions.")

---

[2] Because Plaintiff fails to identify, either in the Complaint or in her opposition, any facts collateral to her investment in the Thor Programs pursuant to the IMs, her fraud and negligence, and quasi-contract, claims must be dismissed for substantially the same reasons as outlined in Movant's opening brief (at pp. 24-25).

[3] Plaintiff's objection, in fn. 4, that the *Morrison* decision held that the transactional test in *Morrison* addresses the merits, not the jurisdiction, of the CEA, misses the point.  Plaintiff asserts federal subject matter jurisdiction based on her CEA claim. Accordingly, if Plaintiff's CEA claims are foreclosed by *Morrison,* there is no jurisdictional basis for keeping the case in this Court.

Plaintiff argues (at p. 11) that *Morrison's* requirement for a domestic transaction should not apply to CEA claims, because CEA liability is triggered by the fact that a defendant is a community pool operator, and *some* other defendants are associated persons. This argument is particularly problematic because Plaintiff's claims do not pertain to commodities transactions and because Plaintiff does not have a direct contractual relationship with any party registered under the CEA.[4]   Plaintiff apparently believes that the CEA creates a cause of action for any conduct occurring anywhere in the world pursuant to a private placement that authorizes investments in commodities, if the party with whom the Plaintiff has contracted (*i.e.,* Thor United Corp. (Nevis)) has an affiliation with persons or parties registered to do business pursuant to the CEA.[5]   This extreme position is unsupported by the purpose of the CEA, set forth in Section 3 of the statute, 7 U.S.C. § 5, the aim of which is to regulate "*transactions subject to [the Act]*" and therefore does not evidence a clear Congressional intent to create global jurisdiction over common-law fraud and breach of contract claims that could surmount the well-established presumption against extraterritoriality.

**B.      Plaintiff Does Not Sufficiently Allege a Domestic Transaction under the CEA**

Plaintiff's argument that *Morrison* does not apply to the CEA because it was decided in the context of a 10(b) claim misses the mark.  It is undisputed that *Morrison* was directed to the interpretation of all statues enacted by Congress.  *See, e.g., Morrison,* 130 S. Ct. at 2881 ("[W]e apply the presumption in all cases ... .")  It has since been applied in other contexts.  *See e.g.,*

---

[4] This conclusion is further buttressed by the fact that Plaintiff's amendment inexplicably added Thor United Corp. (Nevis) – the holding company in which Plaintiff purchased an interest through shares – without providing *any* factual basis for why it is a proper defendant for the CEA claim (beyond trying keep the case in federal court on a pretext).  *See* Def. Br. at 15; *see also* Opti-Max IM ¶ 1.3 (describing investment in the Thor Optima, Thor Opti-Max and Thor Guarant programs as the purchase of Thor United Corp. (Nevis) Class B, C and D shares, credited to the investor's integrated account); Optima IM ¶ 1.3 (same); Guarant IM ¶ 1.3 (same).  This provision again advised that these investments would be managed "according to the Investment Memorand[a]... ." *Id.*

[5] Am. Compl. ¶ 101 - 105.

*Norex Petroleum Ltd. v. Access Indus., Inc.* 631 F.3d 29, 32-33 (2d Cir. 2010) (applying *Morrison* to the RICO statute, 18 U.S.C. §§ 1961 *et. seq.*)  As Movants demonstrated in their opening brief (at p. 12-13, n. 26), the very test that underpinned CEA claims brought under the statute's "antifraud" provisions relied on the same "conduct and effect" test (and in some instance, explicitly on 10(b) cases in their reasoning) that has now been abrogated by *Morrison* (which established a "transactional" test).  Plaintiff fails to rebut this presumption, or point to a domestic transaction within the scope of the CEA, in her Complaint.

 The boundaries of this "transactional" test are set forth in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012).[6]  As discussed in Movants' opening brief (at pp. 13-14), *Absolute Activist* required plaintiffs to allege that title was transferred or irrevocable liability was incurred in the United States.  Plaintiff's opposition (at p. 12) confirms that Plaintiff at most alleges that affiliated entities are located in New York and that she received documents with a New York address.  *Absolute Activist* found deficient a complaint[7] that included allegations that—like those in Plaintiff's complaint —alleged that defendants were located, incorporated or registered as securities agents in the United States and alleged that money was wired to New York. In addition, the *Absolute Activist* complaint  alleged  that defendants marketed funds in the U.S. and that U.S. investors were injured by the alleged fraud, which Plaintiff does not allege here.  *See* 677 F.3d  at 70.

 With respect to Plaintiff's second claim under the CEA, for receiving advice, Plaintiff again seeks to rely on the fact that affiliated entities purportedly subject to the CEA were located in the United States.  It is telling that Plaintiff's Amended Complaint dropped allegations that

---

[6] Plaintiff concedes, at fn. 5 that this case concerns only the "domestic transaction" and not the "transaction in securities listed on domestic exchanges" prong of *Morrison*.

[7] *See Absolute Activist,* No. 09-CV-8862 (BGD), Am. Compl., filed Nov. 19, 2009 [Docket Item No. 3], at ¶ 21.

made it clear that any "advice" she received was during meetings held in Surgusk, Russia, which were contained in paragraphs 32 and 40 of her initial Complaint.  Typically, a fraud plaintiff would add – not omit – details such as the time and place of specific conduct that is the subject of her claims. This fact is relevant, however, to demonstrate, under the "irrevocable liability" theory, that the "meeting of the minds" occurred in Russia. *See, e.g., Pope Investments II, LLC v Deheng Law Firm*, Fed Sec. L. Rep. P. 96976 (S.D.N.Y. Aug. 15, 2012).[8]  In any event, there is no allegation that Plaintiff received from any party any advice relating in any way to commodities investing.  This is understandable, since, as the IMs make clear, once Plaintiff made a decision to invest in the programs, through the purchase of non-voting shares in Thor United Corp., (Nevis), her interest was in any appreciation in the value of the total fund.  This was not an individual investment account where she was advised as to specific investments.  Her rights, and the discretion of the funds, were circumscribed by the terms of the IMs. *See, e.g.*, IMs at ¶ 1.3.  Indeed, Plaintiff's only grievance related in any way to the CEA is that the Movants *didn't* exercise their discretion to invest the funds in commodities – and instead exercised that discretion to invest in real estate – as they were free to do.  Accordingly, the Complaint should be dismissed in its entirety, as the CEA is the only basis of federal subject matter jurisdiction alleged by Plaintiff.[9]

---

[8] *Id.* at * 7 ("Plaintiffs do not allege facts creating a plausible inference that the AAXT Investors incurred irrevocable liability to purchase the shares within the United States: they allege that Deheng drafted the Securities Purchase Agreement, presumably in China, and they do not allege where that agreement was negotiated or signed. The Court therefore cannot determine from the allegations where a 'commitment' or 'meeting of the minds' occurred.")

[9] Notwithstanding Plaintiff's arguments in Opposition, Plaintiff's CEA claims are also time-barred, for the reasons set forth in Movants' initial brief, at Point I.C.

7103331.5

## POINT II
### PLAINTIFF'S ASSERTIONS OF FIDUCIARY DUTY DO NOT SALVAGE HER FRAUD AND BREACH OF CONTRACT CLAIMS BECAUSE ANY FIDUCIARY DUTIES ARE LIMITED BY CONTRACT

Confronted with the plain terms of the IMs, and the disclosures and disclaimers therein, which among other things explicitly authorize real estate investments, and which (like any hedge fund) do not guarantee any particular rate of return or the security of principal, Plaintiff hangs her hat on general and conclusory allegations that all Defendants (whether she had any relationship to them at all or not) breached some kind of fiduciary duty by making real estate investments which, unfortunately, were affected by a global financial collapse that affected virtually every financial sector, including New York real estate. However, it is black-letter law that fiduciary duties may be limited by the terms of a contract, and Plaintiff's generalized allegations of veil-piercing cannot impose such responsibilities on parties whose duties and roles were set forth in the IMs.

**A.     Any Fiduciary Duties by Movants Are Constrained by the Terms of the IMs**

Plaintiff apparently believes that each and every one of the Movants directly owes her a fiduciary duty. Such "allegations are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007)).

Moreover, "it is … elementary agency law doctrine … that the legal duties of an agent may be defined and circumscribed by agreement between principal and agent." See *Mickle v. Christie's, Inc.,* 207 F. Supp.2d 237, 244 (S.D.N.Y. 2002) (*citing Greenwood v. Koven*, 880 F.Supp. 186, 194 (S.D.N.Y.1995); Restatement (Second) of Agency §§ 387, 391). Accordingly, parties may – and the IMs do – "modify by contract the common law agency principles that would govern their relationship in the absence of an agreement." *Greenwood*, 880 F.Supp. at

6

194.  Moreover, any fiduciary duties an agent may possess rise to that higher standard only "as to matters within the scope of his agency." Restatement § 13. But, as discussed above, whatever matters comprise the scope of the agency, including those considered fiduciary, may be defined or modified by agreement between the principal and agent. *See Greenwood*, 880 F.Supp. at 194.

The *Refco* decision, relied on by Plaintiff to allege a fiduciary duty relating to fund management, in fact confirms that the analysis of fiduciary duties must be particularized to the contractual relationship between plaintiffs and ***each*** of the individual defendants.  *See In re Refco Inc. Securities Litigation,* 628 F. Supp.2d 478, 499-512 (S.D.N.Y. 2011). *Refco* involved claims by a hedge fund and its investment manager against  a hedge fund administrator, chief executive officer and president as individuals, and the administrator's corporate affiliate (claims by individual investors were dismissed), and ultimately granted a motion to dismiss with respect to many of the claims, based on a particularized analysis of the contractual responsibilities of each party at issue.  For example, claims against certain individuals for breach of contract were dismissed where those individuals signed the contract in their capacities as corporate officers. *See id.* at 493.

Here, the IMs (whose unambiguous terms govern over conflicting allegations in the Complaint) establish a contractual relationship between Plaintiff and Thor United Corp. (Nevis), for the purpose of purchasing shares in a specific fund, and provide Thor United Corp. (Nevis) with extremely broad discretion as to whether to invest in commodities, real estate, or other sectors. The IMs disclose risks, including the risk of loss of principal. The IMs specify duties of certain related entities to Thor United Corp. (Nevis), not directly to investors.  The IMs caution investors to seek their own independent financial advice.  Furthermore, contrary to Plaintiff's implication that the involvement of related entities constitutes self-dealing, the IMs disclose the

7

specific roles for certain of the "Thor Entities."  *See, e.g.,* Opt-Max IM ¶¶1.1 – 1.4.3; Optima IM ¶¶1.1-1.4; Guarant IM ¶ 1.1, 1.4.     Finally, the IMs limit liability, allowing investors to seek recovery only for deliberately wrongful acts.

**B.     Plaintiff's Veil-Piercing Allegations Are Not Sufficient to Allow Her to Reconfigure the Relationships Set Forth in the IMs and Allege that Fiduciary Duties Are Owed to Her by Each and Every Movant**

Nor does the conduct emphasized by Plaintiff in her opposition suffice to establish the conduct akin to fraud that would be required to meet the New York test to pierce the corporate veil of limited liability and to treat all the Movants as alter egos of each other.

The allegation that Batratchenko's ex-wife was employed by one of the Movants does not support a claim for fraud against Movants.  There is no allegation that any of the Movants appointed her to a position for which she was unqualified, and indeed her qualifications, including an MBA from Seton Hall University and twenty-five years of industry experience, were disclosed in the IMs. *See,* Opt-Max IM ¶ 10.1.4; Optima IM ¶ 11.1.4; Guarant IM ¶ 10.5. There is likewise no allegation that any of these representations were untrue.  The allegation that she held an interest in Atlant does not support a fraud claim against any Movants, much less all of them.

The allegation that Peter Kambolin's alleged involvement with Atlant somehow constitutes fraud is not only deficient, but baffling.  On the one hand, Plaintiff alleges that the representation that Kambolin would have involvement in fund management was material to her decision to invest, because of Kambolin's knowledge and experience, but on the other hand she argues that Kambolin's interest in Atlant made that investment impermissible.  This contradictory and inconsistent position does not constitute a sufficient allegation of self-dealing or fraud by Movants to warrant veil-piercing.

## CONCLUSION

Plaintiff's claim is essentially that Movants should not have made certain real estate investments. That fails to raise any issue under the federal Commodities Exchange Act. In addition, the broad discretion and risk disclosures contained in the IMs foreclose Plaintiff's breach of contract and breach of fiduciary duty claims.

For the foregoing reasons, as well those in Movants' opening brief, Plaintiff's Complaint should be dismissed, with costs awarded to Defendants.

Dated: New York, New York
        October 26, 2012

CARTER LEDYARD & MILBURN LLP

By: _____
     Gary D. Sesser
     Judith M. Wallace
     Alexander G. Malyshev
     Two Wall Street,
     New York, NY 10005
     (212) 732-3200
     *Attorneys for Attorneys for Batratchenko and the Thor Defendants*

9